JAMES R. SUDLER, endorsee of GEORGE GOMEY, v. JOSEPH
H. COLLINS.

In an action by an innocent holder of a promissory note negotiated before
its maturity, against the maker of it, the payee and endorser of it is a
competent witness for the defendant to prove that it had been altered in
a material part and fraudulently put in circulation contrary to his under-
standing and intention, after he had endorsed and delivered it for a
special purpose to another.

And in an action by the holder against the maker of such a promissory note
given for a good and sufficient consideration to the payee of it, by whom
it was afterward endorsed and delivered to a friend to enable him to ob-
tain a loan of money upon it as collateral security merely. but who con
trary to his understanding and intention, put it in circulation, and which
before its maturity came to the possession of the plaintiff, without proof
of any knowledge on his part as to the fraud or the means by which it
had been put in circulation, he will be entitled to recover, notwithstand-
ing the maker has in the meanwhile and before its maturity paid the
amount of it to the payee.

The alteration of such note without the knowledge and consent of the
maker after he has delivered it to the payee, by adding in the body of it
the words, " payable at the Bank of Smyrna," will constitute a material
alteration of it, which will vitiate and avoid it in the hands of an inno-
cent holder.

ACTION of assumpsit on a promissory note for $500
made by Collins, the defendant, payable six months after

date, to the order of Gomey, and by him endorsed, and which afterward came to the hands of Sudler, the plaintiff, before its maturity.

Gomey, the payee and endorser, was called by the defendant as a witness, and objected to by the counsel for the plaintiff.

*Rodney*, for the defendant : The facts which he proposed to prove by the person called, did not impugn in any degree the original validity of the note as it came to and passed from his hands, and would not impute any fraud or misconduct to any one in the matter of the transfer and negotiation of it, prior to the endorsement and transfer of it by the payee, the person now called as a witness.

The Court admitted the witness, who testified that Collins was owing him the amount of five hundred dollars and gave him the note for it, and before it matured, he endorsed it and let a friend of his, Mr. Thayer, in Philadelphia, have it, by way of a loan or accommodation, without any consideration received by him for it, to use and deposit as collateral security, to enable him to obtain a loan of fifty dollars, and that before the note became payable Collins paid him the amount of it, and when he went to look for Thayer in order to get it back through him, he had left the city and he could not learn where he was, or who then held it; and that the understanding between him and Thayer was when he let him have it, that he was only to use it as collateral, and that it was not to be put in circulation until after maturity, as he expected Collins would be ready and desirous to pay it before that time. He also stated that when the note was delivered to him by Collins and when he endorsed it and loaned it to Thayer the words " payable at the Bank of Smyrna," were not in it, but had since been inserted in it by some one, he did not know who, and that up to that time, the note was not payable at any bank, or anywhere else, and that he particularly remembered that from the fact that Collins when he gave it to him, told him he would not make it payable at any bank.

The grounds of defence were that the note, without the knowledge and consent of the defendant, the maker, and after it had been endorsed and negotiated and parted with by Gomey, the payee, had been altered in a material part of it, and that it had been paid by the maker to the payee in good faith and before its maturity.

*Spruance*, for the plaintiff: The alteration of the note as proved, was not such a material alteration as would vitiate or invalidate it in the hands of an innocent, or *bona fide* holder of it for value, without notice, or knowledge that it had been so altered after it had passed from the hands of the maker, and had been endorsed and transferred by the payee of it. The note had never been presented at the Bank of Smyrna for payment, and it was not necessary that it should have been, for the holder had a right to sue upon it anywhere without so presenting it, and in such a suit, it would only be a matter of defence on the other side, in case the maker had funds at the time of its maturity to meet it there. It was therefore not material in the present action, whether the interpolated words were in or out of it; and it had been so decided in this State. *Martin v. Delaplaine*, 5 *Harr.* 329. When the place of payment is not material in the action, as where the maker had no funds at the place of payment to meet it in case it had been duly presented there at maturity, it was not necessary to prove that it had been presented there; for the want of funds to pay it at the appointed time and place, will always excuse the want of presentment according to the appointment, when the action is against the maker, and not an endorser of the note, as in this case; and it had been so decided in England, although the rule there on the subject was somewhat stricter than it was in this country. *Comey v. Fallsell*, 4 *Barn & Ald.* 197.

As for the other ground of defence relied on, he must make his acknowledgments to the learned counsel on the other side for the favor of the proof which he had

produced in support of it; for it clearly proved that there was a good consideration and of full value for the note, as between the original parties, the payee and the maker of it. For Gomey had not only stated that the note was made and given to him by Collins for the sum of five hundred dollars which he then owed him, but that he endorsed it before its maturity and duly delivered it to another, not the plaintiff, however, for a special purpose, as he stated, yet with a view to be used by him as a negotiated and negotiable note among money lenders, but who it further appears, put it in circulation before its maturity contrary to his expectations, and by means of which it afterward came, through how many intermediate hands he knew not, to the possession of the plaintiff, without a tittle of proof however, to show that the latter had a particle of knowledge, or the slightest intimation of any one of the extraordinary facts and details connected with the previous history of it, and by which it was now sought to destroy the validity of it in his hands and to defeat his right as a *bona fide* holder of it without notice or knowledge of anything to impugn its credit or validity, to recover upon it. It was not incumbent upon the plaintiff to show how he came by it; and without any proof to impeach his connection with it, the law would not presume that he either made, or knew any thing about the alteration in the note, or the circumstances under which it was endorsed and disposed of by the payee, or the person to whom he lent it for the purpose of pledging it with still another, as collateral security for a loan of fifty dollars. That could therefore constitute no defence to the action.

*Rodney*, for the defendant: The alteration of the note after the maker had made and delivered it, and even subsequent to the endorsement and transfer of it by the payee, was proved beyond a doubt, and the question thence arises, was the alteration material? If it was, then it was fatal. If a bill of exchange, or promissory

note is altered, without the consent of the parties, in any material part, as in the date, sum, or time when payable, such alteration will, at common law, and independent of the stamp act, render the bill or note wholly invalid, as against any party not consenting to such alteration; and this although it be in the hands of an innocent holder. *Ch. on Bills* 130. *Master v. Miller,* 4 *T. R.* 320. *Warrington v. Earley,* 22 *E. L. & E. R.* 208. Where a bill of exchange was accepted and afterward the words, "payable at Bull Inn, Aldgate," were added to the acceptance without the knowledge and consent of the acceptor, and was endorsed to the plaintiff for value who took it *bona fide* and without knowledge of the alteration, it was held that it was a material alteration which discharged the acceptor from liability to pay it. *Burchfield v. Moore,* 25 *E. L. & E. R.* 123. It thus being well settled on the authority of the cases just cited, that the alteration in question was a material alteration, it devolved upon the plaintiff, the holder of the note, the duty of accounting for it, or at all events, of producing some evidence that would reasonably explain it and satisfy the jury that it had not been made under such circumstances as would or should in law vitiate and avoid it; and if no such evidence had been offered, the plaintiff could not recover upon it. *Add. on Contr.* 1085. But in addition to this it had been shown that the defendant had served notice on the plaintiff that he would be required at the trial of the case to prove the consideration which he gave for the note and the circumstances under which it came into his han 's, and it having been shown that it was fraudulently put in circulation, against the express agreement and intention of the original parties to it, and the plaintiff having wholly failed and omitted to do that, he could not now rely simply on the possession of it and say he had the note, but would not consent to give any explanation as to the manner in which he came by it, or what he had given for it; for in effect, that was all that he had to say in reply to it, and which his considerate silence imported with regard to it. And

if such was the only answer he had to make under such circumstances, it was clear, and well settled that he could maintain no action upon it. *Holme v. Karsher*, 3 *Ald. Cond. Rep.* 256. 5 *Binney* 469.

*Spruance*, replied.

*The Court, Gilpin, C. J.*, charged the jury : The action was on a negotiable promissory note made on the 26th day of July, 1860, by Joseph H. Collins, the defendant, for $500 payable six months after the date of it, to the order of George Gomey, which according to the evidence, was endorsed by him and came to the hands of the present holder of it, the plaintiff, before it matured or became payable, and as they had already discovered from the argument of counsel, there were two grounds of defence to it; first, that it was fraudulently put in circulation after it passed from the hands of Gomey, the payee and original holder of it, that is to say, that it was not put fairly into circulation in the ordinary course and operations of business, and contrary to the understanding and intention of Gomey, the payee, when he parted with it; and secondly, that after it was made and delivered by Collins to Gomey, and after it had been endorsed and delivered by the latter to Thayer, and before its maturity, it had been altered in the body of it, by the additional words written therein and at the close of it, " payable at the Bank of Smyrna," without the knowledge and consent of Collins, and by some one unknown to him; and which it had been contended by his counsel, was a material alteration, or an alteration in a material part of it, that vitiated and invalidated it in the hands of the plaintiff. And as to these objections, or grounds of defence relied on by the defendant in the action, upon the first point the court had to say to them, that if they were satisfied from the evidence that there was a good and *bona fide* consideration for the note as between Collins, the maker, and Gomey, the payee of it, at the time it was

made and delivered by the former to the latter, and that the latter endorsed and delivered it before its maturity to Thayer, his friend as he had stated, or lent it temporarily to him, in order that he might obtain a loan of money upon the credit of it, by depositing it as collateral security therefor in the hands of another, and that it afterward, but still before its maturity, came to the possession of the plaintiff, the present holder of it, so far as that matter alone was concerned, it would not constitute a legal defence to the action; notwithstanding the amount of it had been paid by Collins, to Gomey before its maturity, and if that were the only question or ground of defence in the case, their verdict should be for the plaintiff. For if there was such a consideration for the note as between Collins, the maker, and Gomey, the payee of it, and the latter before its maturity endorsed it and let Thayer have it for the special purpose stated, and he also before its maturity let the plaintiff have it, or was guilty of any breach of good faith, or of any violation of his agreement with Gomey in putting it in circulation contrary to his understanding and intention, by means of which it afterward came to the possession of the plaintiff before its maturity, without any proof of his knowledge of, or participation in such breach of faith, whatever might be the effect of such a fraudulent transaction in a suit upon the note against Gomey as the endorser of it, it could be no defence in law in an action upon it by such a holder against Collins, the maker of it, who had received from the payee to whom he made it full consideration for it, although Collins had before its maturity paid the amount of the note to Gomey.

But he would proceed next to consider the other and second ground of defence before stated, in regard to which the court would further say that if the jury should be satisfied from the evidence that when the note in question was made and delivered by Collins to Gomey, there was no place of payment written in the body of it, and that the words "payable at the Bank of Smyrna," which

now appeared in the body and at the close of it, were afterward written and added to it by any one without the knowledge and consent of Collins, the maker of it, that would constitute in law a material alteration of it, and such an alteration in a material part of it without the sanction of the maker, as would vitiate and avoid it in the hands of the plaintiff, even if such material alteration had been made in it before it came to his hands and without any privity or knowledge of it on his part. Because if it was so altered in a material part without his knowledge and consent, after he had made and parted with it, it was not the note as he made it, and was consequently not his note, and he would not be liable afterward upon it in the hands of any holder, however innocent, who had or held it after such alteration. For the rule of law on that point was that any alteration made in a material part of a written instrument by a party holding it, without the sanction and consent of the party bound by it, for the greater benefit or advantage of the party holding it, will vitiate and avoid it; and the party who has the custody of an instrument made for his benefit, is bound to preserve it in its original state. *Burchfield v. Moore*, 25 *E. L. & E. R.* 123. And the first reason for the rule is that of public policy to prevent fraud by not allowing a person to take the chance of perpetrating it without incurring any risk of losing by the event when it is detected; and the second is to insure the identity of the instrument and prevent the substitution of another without the privity or consent of the party concerned. 1 *Greenl. Ev.* sec. 565. And that such an alteration in a promissory note as was then under investigation, might be for the benefit, or advantage of the holder of it, was apparent when they reflected that he might in that manner, not only make it more convenient for himself to present the note at the place of payment when due, and thus fix the liability of the endorser, but also at the same time make it much more inconvenient for the maker to meet the payment of it. If, therefore, the jury should conclude

69

upon the proof before them in regard to the matter that such an alteration as had been alleged and he had already described and defined to them, had been made in the note as before stated by him, the plaintiff would not be entitled to recover upon it, and their verdict should be for the defendant. But if otherwise, then it should be for the plaintiff with damages assessed to the amount of the note with interest thereon from the time it became payable, which was six months after the date of it.

The defendant had a verdict.